UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN RANAE GLEEN CANDLER,<br><br>Plaintiff,<br><br>v.<br><br>J. BALL, et al.,<br><br>Defendants. | No. 1:23-cv-00459-JLT-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 85) |

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed September 10, 2025.

**I.**

**PROCEDURAL BACKGROUND**

This action is proceeding on Plaintiff's excessive force claim against Defendants Ball, Armendariz, and Baker.

Defendants filed an answer to the operative complaint on June 26, 2024. (ECF No. 70.) After an unsuccessful settlement conference, the Court issued the discovery and scheduling order on October 2, 2024. (ECF No. 77.)

Defendants filed the instant motion for summary judgment on September 10, 2025. (ECF No. 85.) On September 26, 2025, and October 17, 2025, Plaintiff filed a notice to proceed, which the Court construes as his opposition to Defendants' motion for summary judgment. (ECF Nos.

1

87, 88.)

## II.

## LEGAL STANDARD

### A.   Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

## III.

## DISCUSSION

### A.   Summary of Plaintiff's Complaint

According to Plaintiff's complaint, while Plaintiff was in the Visalia County Jail and after going to court, Plaintiff was being transferred after having been sentenced.  Officers placed Plaintiff in a holding cell with four general population gang inmates, when he was to be placed in protective

custody. Two of the four inmates attacked Plaintiff while he was in hold cell with them resulting in a laceration to Plaintiff's head and bruises on his face.

When Plaintiff was back to Wasco State Prison, he was going to pill call and was grabbed by an unidentified prison guard and slammed against a concrete wall multiple times because he is African American. The guard then slammed Plaintiff down on the concrete and started to slam Plaintiff's head onto the ground multiple times. The guard was also punching Plaintiff in the ribs. Once they stood, Plaintiff's head was slammed into the concrete wall multiple times.

**B.      Statement of Undisputed Facts[1,2]**

1.      Plaintiff alleges that he was subjected to excessive force by CDCR correctional officers while he was incarcerated at Wasco State Prison. Declaration of John Faulconer ("Faulconer Decl.") ¶ 2, Ex. A, Excerpts of the Deposition of Steven Plaintiff ("Pl. Dep."), 14:8-25.)

2.      Plaintiff alleges that Defendants Armendariz, Baker, and Ball are correctional officers who attacked him on February 2, 2023. (ECF No. 58 at 1-2.)

3.      On the date of the incident, Plaintiff was waiting in the medical prescription line ("pill line") when another inmate cut in front of him. The pill line was outside the medical building and medications were distributed out of a window from the office. Plaintiff verbally told the other inmate that he had been cutting him in line. (Faulconer Decl. ¶ 2, Pl. Dep. at 16:10-17:6; 20:3-14.)

4.      Plaintiff claims that an unidentified officer interrupted his conversation with the other inmate, yelled at him, and snatched him out of the pill line. The officer grabbed Plaintiff by the front and took him to a wall where he demanded that Plaintiff place his hands behind his back. The officer began ramming Plaintiff's head against the wall. Plaintiff could not identify the identity

---

[1] Hereinafter referred to "UF."

[2] Plaintiff has not contested any of the facts set forth in Defendants' Statement of Undisputed Facts (which are drawn largely from Plaintiff's own deposition testimony), nor has he presented his own separate "Statement of Disputed Facts." More importantly, in opposing Defendants' motion, Plaintiff has pointed to no material facts or genuine issues to be resolved at trial. Indeed, he has presented no evidence demonstrating that Defendants applied force maliciously and sadistically to cause harm. Nonetheless, the Court reviewed Plaintiff's deposition transcript cited by Defendants in the statement of undisputed facts and finds that Defendants' representations regarding Plaintiff's deposition testimony are accurate.

1    of the officer. (Faulconer Decl. ¶ 2, Pl. Dep. at 18:5-19:6.)

2        5.    Plaintiff claims that Ball told the other present inmates to turn around, but she did
3    not physically hit Plaintiff. (Faulconer Decl. ¶ 2, Pl. Dep. at 19:7-13; 21:5-7.)

4        6.    Plaintiff claims that the officer that removed him from the line began to slam his
5    head against the brick wall forcefully. The officer placed his hand on the back of Plaintiff's head
6    and forcefully slammed his head against the wall more than five times. Plaintiff claims that the
7    right side of his forehead, between his hairline and right eye, was hitting the wall. The officer also
8    struck Plaintiff in his ribs multiple times resulting in bruising. (Faulconer Decl. ¶ 2, Pl. Dep. at
9    21:19-24:20; 27:2-6.)

10       7.    Plaintiff testified that he could feel his head swelling right after his head was
11   slammed into the wall and knew it was visible because other inmates told him. (Faulconer Decl. ¶
12   2, Pl. Dep. at 26:7-21.)

13       8.    The officer who slammed Plaintiff's head took him to a holding cell. While in the
14   cell an estimated four-to-six officers entered the cell and twisted his arm behind him. The officer
15   who previously slammed his head against the concrete wall in the pill line slammed his head against
16   the wall again in the holding cell. Plaintiff was unable to identify any of the attacking officers.
17   (Faulconer Decl. ¶ 2, Pl. Dep. at 24:25-25:3; 30:8-32:6; 33:6-20; 35:3-36:9.)

18       9.    Ball did not assault Plaintiff in the holding cell. (Faulconer Decl. ¶ 2, Pl. Dep. at
19   29:19-30:12.)

20       10.   Officers escorted Plaintiff from the holding cell to an administrative building but
21   attacked him during the transport. Plaintiff could not identify these officers. (Faulconer Decl. ¶ 2,
22   Pl. Dep. at 29:9-15; 45:4-9.)

23       11.   During the escort to the administrative office, the unidentified officers stopped in
24   front of a building and rammed Plaintiff against a wall and began ramming his heading into a wall
25   again. They twisted his arms and raised them over his head. (Faulconer Decl. ¶ 2, Pl. Dep. at 37:12-
26   38:10; 45:4-9.)

27       12.   The officers who attacked Plaintiff were the dispatched escorting officers, and not
28   the original unidentified officer who allegedly slammed his head against the wall in the pill line.

1  Plaintiff could not identify the officer that slammed his head against the wall during the escort.
2  (Faulconer Decl. ¶ 2, Pl. Dep. at 38:11-22.)

3       13.    Plaintiff's head was slammed into the wall multiple times, the officer had his hand
4  on the back of Plaintiff's head and reared it back from the wall and forward, and the same side of
5  his head was struck into the wall.  (Faulconer Decl. ¶ 2, Pl. Dep. at 38:23-39:5, 43:5-16.)

6       14.    Plaintiff claims that he was being punched and kicked by the officers, including in
7  the ribs. He was told to spread his legs and he his testicles were kicked from behind. Plaintiff alleges
8  that the officer that kicked him from behind was Baker.  (Faulconer Decl. ¶ 2, Pl. Dep. at  39:16-
9  40:23, 42:20-23.)

10       15.    Plaintiff claims that more than four officers were present during the assault on the
11  way to the administrative building. Aside from Baker, Plaintiff did not identify any of the officers.
12  Following the alleged assault, he was brought to a holding cell in the administrative building.
13  (Faulconer Decl. ¶ 2, Pl. Dep. at 44:18-45:20.)

14       16.    Plaintiff claims that his head had a bleeding wound following the attack. He testified
15  that he did not urinate blood or suffer any other effects from being kicked in the groin.  (Faulconer
16  Decl. ¶ 2, Pl. Dep. at 49:4-21; 50:17-19.)

17       17.    While at the administrative building holding cell, nurses evaluated Plaintiff for
18  injuries. No injuries were identified in the nurse's medical report.  (Faulconer Decl. ¶ 2, Pl. Dep. at
19  45:25-46:8; Faulconer Decl. ¶ 3, Ex. C, experts of Plaintiff medical records ("Medical records), p.
20  2, Medical Report of Injury or Unusual Occurrence dated February 2, 2023, time seen at 7:50 am.)

21       18.    A second nurse evaluation occurred with Plaintiff following the alleged incident on
22  February 2, 2023, at 2:58 pm. Plaintiff indicated that his head hurt but the nurse identified no
23  injuries that would corroborate Plaintiff's claims.  (Faulconer Decl. ¶ 3, Ex. C, Medical records, p.
24  3, Medical Report of Injury or Unusual Occurrence dated February 2, 2023, time seen at 2:58 pm.)

25       19.    On February 2, 2023, after the alleged incident at 3:22 pm, Plaintiff underwent an
26  interview regarding his allegations. The interview was video-recorded, and he was questioned
27  regarding what occurred and to identify his injuries. There do not appear to be any injuries on
28  Plaintiff that corroborate the allegations of the use of force. When asked about his allegations and

1  injuries, Plaintiff does not state that he was struck in the ribs. He says that he has no visible injuries
2  aside from his head, including to his testicles/groin. (Faulconer Decl. ¶ 2, Pl. Dep. at 47:11-48:3;
3  Faulconer Decl., ¶ 4, Ex. D, custodian of records declaration regarding authenticity of copy of
4  video; Ex. E.)

5       20.    A third nurse evaluation occurred with Plaintiff on February 2, 2023, at 4:27 p.m.
6  The nurse only noted an "old scratch" on Plaintiff's right temple and Plaintiff reported that he
7  "wiped it off." (Faulconer Decl. ¶ 3, Ex. C, Medical records, p. 4, Medical Report of Injury or
8  Unusual Occurrence dated February 2, 2023, time seen at 4:27 pm.)

        **C.**    **Analysis of Defendants' Motion**

Defendants argue the evidence does not support Plaintiff's allegations as he admitted that Ball did not subject him to force, and he failed to identify Armendariz as subjecting him to force. Lastly, the medical evidence demonstrates that the assault did not happen.

In opposition, Plaintiff simply states Defendants attacked him without a motive, (ECF No. 87), and the force was not used in a good faith effort to maintain or restore order, but was applied maliciously and sadistically to cause harm, (ECF No. 88).

Based on all of the evidence presented in connection with the pending motion for summary judgment, and for the reasons stated below, the Court concludes that Defendants are entitled to summary judgment in his favor.

When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002). To establish a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 6–7 (1992). In making this determination, the court may evaluate (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. Id. at 7; see also id. at 9–10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from

6

1  constitutional recognition de minimis uses of physical force, provided that the use of force is not
2  of a sort repugnant to the conscience of mankind." (internal quotation marks and citations
3  omitted)).

4  Nevertheless, "prison officials are authorized and indeed required to take appropriate
5  measures to maintain prison order and discipline and protect staff and other prisoners." LeMaire
6  v. Maas, 12 F.3d 1444, 1458 (9th Cir. 1993). "The Eighth Amendment's prohibition of 'cruel and
7  unusual' punishments necessarily excludes from constitutional recognition de minimis uses of
8  physical force, provided that the use of force is not of a sort 'repugnant to the conscience of
9  mankind.' " Hudson v. McMillian, 503 U.S. 1, 9 (1992), quoting Whitley v. Albers, 475 U.S. 312,
10 327 (1986).

11 In addition, the lack of injury is relevant to the inquiry. See Whitley, 475 U.S. at 321 (noting
12 that the extent of the injury suffered by an inmate is one factor that may suggest "whether the use
13 of force could plausibly have been thought necessary" in the situation, "or instead evinced such
14 wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing
15 willingness that it occur.")  "Not every malevolent touch by a prison guard gives rise to a federal
16 cause of action," and "[a]n inmate who complains of a 'push or shove' that causes no discernible
17 injury almost certainly fails to state a valid excessive force claim." Wilkins v. Gaddy, 559 U.S.
18 34, 38 (2010), quoting McMillian, 503 U.S. at 9; see also Graham v. Connor, 490 U.S. 386, 396
19 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's
20 chambers, violates the [federal Constitution]. "); Whitley, 475 U.S. at 321-22 ("Prison officials
21 are entitled to deference whether a prisoner challenges excessive force or conditions of
22 confinement."); Simmons v. G. Arnett, 47 F.4th 927, 933 (9th Cir. 2022) ("prison officials should
23 be accorded 'wide-ranging deference' when they are exercising their judgment to maintain prison
24 safety," because "[i]n the specialized context of prison operations, the use of force can be a
25 'legitimate means for preventing small disturbances from becoming dangerous to other inmates or
26 the prison personnel' ") (citations omitted).

27     1.    <u>Defendants Armendariz and Ball</u>

28 Here, it is undisputed that Plaintiff did not identify either Armendariz or Ball as officers

7

who subjected him to force. (UF 4, 5, 8, 9, 12, 15.) Thus, Plaintiff's deposition testimony establishes that Defendant Ball did not use force on Plaintiff and he did not identify Armendariz as using any force, or even being present, during any of the alleged attacks. Id.

Under these circumstances, the conclusory allegations in Plaintiff's verified first amended complaint do not create genuine issues of material fact. See Moran v. Selig, 447 F.3d 748, 760 n.16 (9th Cir. 2006) ("[A] verified complaint may serve as an affidavit for purposes of summary judgment if it is based on personal knowledge and if it sets forth the requisite facts with specificity.") (emphasis added). Because Plaintiff has failed to demonstrate an essential element of his claim, summary judgment should be granted in favor of Defendants Armendariz and Ball.

### 2. Medical Evidence Demonstrates Excessive Force as Not Used

Based on the evidence before the Court, no reasonable jury could believe that excessive force was used upon Plaintiff.

It is undisputed Plaintiff was evaluated by three separate nurses and no injuries were identified to corroborate Plaintiff's claim of his head being bashed repeatedly into a brick wall, multiple strikes to his ribs, or a kick to his testicles. (UF Nos. 17, 18, 20.) The recorded interview from that same date also shows that Plaintiff did not suffer from any head injuries, despite testifying that he had a bleeding and swollen head wound.[3] (UF Nos. 7, 16, 19.) In addition, Plaintiff did not report any injuries to his ribs and said he had no visible injuries to his testicles. (UF No. 19.)

Defendants submit expert opinion evidence by Dr. Klein who reviewed the pertinent medical records, and concluded that Plaintiff was not pushed multiple times into a brick wall as there was no evidence of injuries that would be expected as a result of such conduct, such as swelling, bruising, and scarping of the superficial layer of the skin. (Faulconer Decl. ¶ 4, Ex. C, Expert Report, p. 3.) In addition, Plaintiff failed to identify any Defendant who engaged in such conduct. (UF 4, 5, 8, 9, 12, 15.)

With regard to Plaintiff's allegations that he was struck in the ribs and kicked in the testicles by Defendant Baker, Dr. Klein clearly noted that there is no affirmation by any healthcare member

---

[3] Although Plaintiff pointed to an injury on his forehead, it was noted by medical staff as an "old scratch" which he "wiped off." (UF 20.)

8

1  of any testicular swelling or bruising on Plaintiff's sides.  (UF 14; Faulconer Decl. ¶ 4, Ex. C,
2  Expert Report, p. 3.)  In fact, Plaintiff did not report during the force interview that he struck in the
3  ribs and acknowledged there was no visible injury associated with the kick to his testicles.  (UF
4  19.)  Dr. Klein specifically noted that there was no swelling or bruising identified that would
5  corroborate those injuries and Plaintiff affirmatively stated that there was no visible evidence of
6  those injuries. (UF No. 19; Faulconer Decl. ¶ 4, Ex. C, Expert Report, p. 3.)  Absent any evidence
7  of injuries that would corroborate Plaintiff's allegations, and the contradictory medical evidence
8  and expert opinion, no reasonable jury could find that this conduct occurred, and Plaintiff cannot
9  prove his claims.

10  Defendants have met their initial burden of informing the Court of the basis of the motion,
11  and identifying those portions of the record which they believe demonstrates the absence of a
12  genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish the existence of
13  a genuine issue of material fact. See Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475
14  U.S. 574, 586 (1986).

15  Because an inquiry into excessive force "nearly always requires a jury to sift through
16  disputed factual contentions, and to draw inferences therefrom, [this Circuit] ha[s] held on many
17  occasions that summary judgment or judgment as a matter of law in excessive force cases should
18  be granted sparingly." Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002). However, the evidence
19  presented does not show a genuine dispute as to any material fact relating to Plaintiff's claim of
20  excessive force against Defendants.  Even assuming the validity of the allegations in Plaintiff's
21  first amended complaint,  the evidence detailed above does not support his claim that his head was
22  based into a wall, he was kicked forcefully in the testicles, or that he was struck repeatedly in the
23  ribs when the medical evidence shows the lack of injury consistent with such allegations. See Scott
24  v. Harris, 550 U.S. 372, 380 (2007) (emphasizing that "[w]hen opposing parties tell two different
25  stories, one of which is blatantly contradicted by the record, so that no reasonable jury could
26  believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for
27  summary judgment.").  Thus, despite ample opportunity for discovery during the pendency of this
28  case, there is no evidence to create a genuine issue of material fact with respect to either the

Case 1:23-cv-00459-JLT-SAB   Document 89   Filed 11/06/25   Page 10 of 11

objective element or the subjective element of Plaintiff's Eighth Amendment excessive claim to proceed to a jury trial.[4] See Scott, 550 U.S. at 380; White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990) (notwithstanding the parties' dispute as to the amount of force used, the Ninth Circuit rejected claim that excessive force was used because there was no evidence of any injuries). Accordingly, Defendants' motion for summary judgment should be granted.[5]

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and
2. Judgment be entered in favor of all Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified

---

[4] Indeed, Plaintiff filed two separate oppositions, consisting of one and two pages, stating only that prison officials maliciously and sadistically used excessive force upon him. (See ECF Nos. 87, 88.)

[5] Because the Court finds summary judgment should be granted on the merits of Plaintiff's claim, the Court does not reach the alternative argument for qualified immunity.

10

1  time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39
2  (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 6, 2025**

STANLEY A. BOONE
United States Magistrate Judge

11